1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

3

ANN ELIZABETH HOWARD, et al.,

4

    Plaintiffs,

5

    v.

CIVIL NO. 05-1928 (RLA)

6

GREGORIO FELICIANO, et al.,

7

    Defendants.

8

9

10

### ORDER IN THE MATTER OF DEFENDANTS'
### MOTION FOR SUMMARY JUDGMENT

11

    Defendants have moved the Court to enter summary judgment

12

dismissing various of the claims asserted in the complaint. The court

13

having reviewed the arguments presented by the parties as well as the

14

documents submitted therewith hereby rules as follows.

15

### I. FACTUAL BACKGROUND

16

    Plaintiffs are the parents of the minor ROBERT ALMODOVAR HOWARD

17

suing on their own behalf and in representation of their son. Named

18

defendants are GREGORIO FELICIANO, the PUERTO RICO DEPARTMENT OF

19

EDUCATION ("DOE") through its Secretary, and the COMMONWEALTH OF

20

PUERTO RICO ("COMMONWEALTH") through its Governor.

21

    Plaintiffs assert claims under the Individuals with Disabilities

22

Education Act of 1970 ("IDEA"), 20 U.S.C. § 1400, 42 U.S.C. § 1981,

23

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d and our

24

local tort statute, Laws of P.R. Laws Ann. tit. 31 § 5141 (1990).

25

26

CIVIL NO. 05-1928 (RLA)                                              Page 2

According to the complaint, the ALMODOVARs enrolled their son in seventh grade at the DOE's "20 de Septiembre de 1988" School in Vieques. School officials were opportunely informed that ROBERT suffered from Attention Deficit Hyperactivity Disorder and Asperger's Syndrome (a high functioning form of autism) which entitled him to special education  program services. ROBERT had been a special education student since first grade in stateside schools and had adequately performed until  attending FELICIANO's math class.

In addition to a discriminatory grading system,[1] plaintiffs complain of the abusive harassment ROBERT was constantly subjected to by FELICIANO due to his race and national origin to the point where the parents were forced to request a restraining order because they feared for his personal safety after their grievances had gone unanswered by the DOE officials. Lastly, the ALMODOVARs aver they were forced to take their son back to the United States to avoid further damages. Plaintiffs further allege that defendants failed to comply with the duties imposed by IDEA.

Plaintiffs seek relief for their mental suffering as well as compensatory and punitive damages.

---

[1] According to plaintiffs, the minor was labeled by the teacher as "el gringo" and because of his race and nationality was given a "C" grade even though his test scores were "A".

## II. PROCEDURAL BACKGROUND

In our Order in the Matter of Defendants' Partial Motion to Dismiss (docket No. 46) defendants' request to dismiss the IDEA claim was denied. However, relief pursuant to this statute was limited to reimbursement of appropriate expenses under IDEA.

Further, the request to dismiss the tort claim pursuant to Eleventh Amendment immunity was granted but limited to the COMMONWEALTH, the DOE and their respective principal officers in their official capacity.

## III. MOTION FOR SUMMARY JUDGMENT

Defendants have raised the following arguments in support of their summary judgment request:

- The claims asserted under 42 U.S.C. § 1981 requesting monetary damages are barred by the Eleventh Amendment to the United States Constitution and are also time-barred.
- The claims asserted under IDEA are time-barred, or in the alternative, plaintiffs have failed to establish a cause of action because ROBERT ALMODOVAR HOWARD was never registered as a special education student nor was there ever any complaint regarding the breach of this statute to the DOE.
- The Title VI claims are time barred, or in the alternative, plaintiffs have failed to establish a cause of action under this provision since the DOE did not discriminate against ROBERT ALMODOVAR HOWARD.

---

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).  A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (*citing* Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

CIVIL NO. 05-1928 (RLA)                                    **Page 5**

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

CIVIL NO. 05-1928 (RLA)                                          **Page 6**

---

Lastly, motions for summary judgment must comport with the provisions of Local Rule 56(c) which, in pertinent part reads:

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

This provision specifically requires that in its own statement of material facts respondent either admit, deny, or qualify each of movant's proffered uncontested facts and for each denied or qualified statement cite the specific part of the record which supports its denial or qualification. Respondent must prepare its separate statement much in the same manner as when answering a complaint.

The purpose behind the local rule is to allow the court to examine each of the movant's proposed uncontested facts and ascertain whether or not there is adequate evidence to render it uncontested. As clearly evinced by the following excerpt, compliance therewith is paramount for the court to be able to carry out its fact-finding role.

We repeatedly have emphasized the importance of local rules similar to Local Rule 56. Such rules were inaugurated

in response to this court's abiding concern that, without

them, summary judgment practice could too easily become a

game of cat-and-mouse. Such rules are designed to function

as a means of focusing a district court's attention on what

is - and what is not - genuinely controverted. When

complied with, they serve to dispel the smokescreen behind

which litigants with marginal or unwinnable cases often

seek to hide [and] greatly reduce the possibility that the

district court will fall victim to an ambush.

Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir.

2007) (internal citations and quotation marks omitted). *See also*,

Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005) ("rule aims to

make the parties organize the evidence rather than leaving the burden

upon the district judge."); Morales v. A.C. Orssleff's EFTF, 246 F.3d

32, 33 (1st Cir. 2001) (summary judgment should not "impose [upon the

court] the daunting burden of seeking a needle in a haystack"); *see*

*also*, Leon v. Sanchez-Bermudez, 332 F. Supp.2d 407, 415 (D.P.R. 2004).

     Apart from the fact that Rule 56(e) itself provides that

"[f]acts contained in a supporting or opposing statement of material

facts, if supported by record citations as required by this rule,

shall be deemed admitted unless properly controverted" in discussing

Local Rule 311.12, its predecessor, the First Circuit Court of

Appeals has stressed the importance of compliance by stating that the

parties who ignore its strictures run the risk of the court deeming

the facts presented in the movant's statement of fact admitted. "Given the vital purpose that such rules serve, litigants ignore them at their peril. In the event that a party opposing summary judgment failed to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." <u>Caban Hernandez</u>, 486 F.3d at 7. *See also*, <u>Cosme-Rosado v. Serrano-Rodríguez</u>, 360 F.3d 42 (1st Cir. 2004) ("uncontested" facts pleaded by movant deemed admitted due to respondent's failure to properly submit statement of contested facts). "[A]bsent such rules, summary judgment practice could too easily become a game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues.'" <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) (citing <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 931 (1st Cir. 1983)).

## IV.  **THE FACTS**

Plaintiffs having failed to controvert any of the facts adequately proffered in defendants' Statement of Uncontroverted Material Facts (docket No. 91), we find the following material facts uncontested.

Codefendant GREGORIO FELICIANO CASTILLO was the 7th grade mathematics teacher at the "20 de Septiembre de 1988" Intermediate School in Vieques, Puerto Rico, during the 2003-2004 school year.

On January of 2004, plaintiff ROBERT ALMODOVAR HOWARD was enrolled by his parents in the "20 de Septiembre de 1988" School.

On March 31, 2004, the Grades Report for the second cycle were issued. Plaintiff ROBERT ALMODOVAR HOWARD received a "C" in his mathematics class. This report was signed by FERDINAND ALMODOVAR, the minor's father.

The following day, on April 1, 2004, FERDINAND ALMODOVAR sent a letter to DR. CESAR A. REY-HERNANDEZ, former Secretary of Education and other officials of the DOE. In this letter, MR. ALMODOVAR alleged that his son had been the victim of discrimination on the part of GREGORIO FELICIANO for being of Caucasian descent and for having white skin and blond hair. MR. ALMODOVAR went on to state that the reason why his son received a "C" grade in his Mathematics class was because of MR. FELICIANO's prejudice.

On May 13, 2004, ROBERT ALMODOVAR HOWARD was given a Basic Mathematics Skills test by ANA DEL PILAR LOPEZ-DIAZ. This test was not graded by GREGORIO FELICIANO, but by another math teacher. The resulting score was a 63 out of 96 for a score of 66%.

As a result of FERDINAND ALMODOVAR's April 1, 2004 letter, the DOE commenced an investigation of the allegations charged therein.

On or about May 13, 2004, MERELYS RAMOS, a DOE investigator, met with some students and faculty of the "20 de Septiembre de 1988" School to inquire about the facts alleged in MR. ALMODOVAR's administrative complaint.

During the semester that ROBERT ALMODOVAR HOWARD attended the "20 de Septiembre de 1988" School, all the complaints made by MR. ALMODOVAR regarding his son were related to an alleged racial discrimination on the part of GREGORIO FELICIANO. None made reference to the DOE failing to provide the minor with any Special Education services.

On August 4, 2004, the DOE notified GREGORIO FELICIANO of his right to an Informal Administrative Hearing for him to show cause why he should not be subjected to suspension from work and pay or to dismissal of his duties at the DOE as a result of the charges filed by MR. ALMODOVAR.

On August 5, 2004, GREGORIO FELICIANO started working at the "Centro de Orientacion Vocacional y Educativa Integrado a la Comunidad" ("COVEICO") where he had been reassigned by the DOE.

On August 6, 2004, the day plaintiffs allege that MR. FELICIANO approached the "20 de Septiembre de 1988" School with the intention of harassing and intimidating ROBERT ALMODOVAR HOWARD, he was merely walking to the School Superintendence in Vieques in order to meet with Superintendent EVA L. TORRES to receive instructions regarding his duties in his new position as he was ordered to do by MR. NILO ADAMS COLON. In order to get from "COVEICO" to the Vieques Superintendence, MR. FELICIANO had to, per force, pass in front of the "20 de Septiembre de 1988" School.

CIVIL NO. 05-1928 (RLA)                                          **Page 11**

On April 28, 2005, plaintiffs filed a complaint in the Court of First Instance of Fajardo, Puerto Rico, against GREGORIO FELICIANO, the COMMONWEALTH and the DOE alleging violations under "the Federal Civil Rights Act and the applicable local provisions."

On October 13, 2005, plaintiffs filed a Motion for Voluntary Dismissal without Prejudice in the aforementioned case which was granted on October 31, 2005.

This suit was filed on September 1, 2005.

ROBERT ALMODOVAR HOWARD is no longer enrolled in a Puerto Rico school. He was registered by his parents in a school in Connecticut.

## V. **42 U.S.C. § 1981**

### A. APPLICABLE STATUTE OF LIMITATIONS

The applicable statute of limitations for a § 1981 cause of action will vary depending on the type of conduct challenged in the pleadings. Because § 1981 does not contain a limitations provision, federal courts would normally apply "the most appropriate or analogous state statute of limitations." Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). However, in December 1990 Congress passed into law 28 U.S.C. § 1658, a general 4-year statute of limitations provision for claims arising under federal statutes enacted after December 1, 1990.

Sec. 1658(a) provides "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date

of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues."

It appearing that § 1981 was amended by the Civil Rights Act of 1991, 105 Stat. 1071, that is, subsequent to the enactment of the new limitations provision, we must decide whether the claims asserted in the complaint are subject to Puerto Rico's personal injury limitations period or § 1658.

The original version of § 1981 reads as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...

The Supreme Court has interpreted the phrase "to make... contracts" contained in the pre-1991 version of § 1981 as protection "only to the formation of a contract, but not to problems that may arise later... to conduct... after the contract relation has been established including breach of the terms of the contract... Such post formation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations...." Patterson v. McLean Credit Union, 491 U.S. 164, 176-77, 109 S.Ct. 2363, 105 L.Ed.2d 132. The phrase to "enforce contracts" in the same statute was limited to "protection of a legal

CIVIL NO. 05-1928 (RLA)                                    **Page 13**

process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race." Patterson, 491 U.S. at 177.

The Supreme Court concluded that "a cause of action arises under an Act of Congress enacted after December 1, 1990 - and therefore is governed by § 1658's 4-year statute of limitations - if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." Jones, 541 U.S. at 382 (internal brackets and quotation marks omitted).

In this case, plaintiffs allege that the minor was subjected to harassment by his math teacher because of his race to the point where he was given a "C" grade when he deserved an "A" grade. This particular conduct was not covered under the pre-1991 version of § 1981. See, Patterson, 491 U.S. at 179 (although "reprehensible... [racial harassment] is not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Rather, it was made possible as a result of the Civil Rights Act of 1991 whereby § 1981 was amended to include a broader definition of its provisions which now includes post contract harassment.[2] See i.e., CBOS West, Inc. V. Humphries, ___ U.S. ___, 128

_____

[2]  The following provision was added to § 1981:

S.Ct. 1951 (2008); (retaliation claims actionable under amended version of § 1981); Jones, 541 U.S. at 383 (1991 amendment extended coverage to "hostile work environment, wrongful termination, and failure to transfer claims").

Based on the foregoing, the § 1981 claims asserted in this action are subject to the four-year limitations period established in § 1658.

Defendants contend that the § 1981 claims accrued on or about **April 1, 2004.** Assuming this argument to be true, the complaint filed in this forum on **September 1, 2005,** falls within the four-year applicable term.

Accordingly, defendants' request to dismiss the § 1981 claim as untimely is **DENIED.**

## B. PARENT'S STANDING

Constitutional deprivation suits must be brought by the individuals affected by the particular acts or omissions under attack. Núñez González v. Vázquez Garced, 389 F.Supp.2d 214 (D.P.R. 2005); Reyes Vargas v. Roselló González, 135 F.Supp.2d 305, 308 (D.P.R. 2001). In this vein, it has been held that relatives may not

---

(b)   "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

CIVIL NO. 05-1928 (RLA)                                          **Page 15**

assert claims for the death of a family member as a result of unconstitutional conduct unless the challenged action is directed at their family relationship. <u>Robles-Vázquez v. Tirado-Garcia</u>, 110 F.3d 204, 206 n.4 (1st Cir. 1997); <u>Núñez González</u>; <u>Reyes Vargas</u>.

In this particular case, the parents of ROBERT ALMODOVAR HOWARD did not personally suffer any constitutional deprivation as a result of the acts and/or omissions alleged in the complaint for which reason they may not assert individual § 1981 claims. Accordingly, they have no standing to assert constitutional claims in these proceedings; they may only act in a representative capacity on behalf of their minor son.

Accordingly, the § 1981 claims asserted by MR. and MRS. ALMODOVAR in their individual capacities are hereby **DISMISSED** for lack of standing.

### C. MONETARY DAMAGES AGAINST THE COMMONWEALTH THE DOE, AND DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution[3] bars the commencement and prosecution in federal court of suits claiming damages brought against any state, including Puerto Rico, without its

---

[3]  The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

consent. <u>Fresenius Med. Care Cardiovascular Res., Inc. v. Puerto Rico</u> <u>and Caribbean Cardiovascular Ctr. Corp.</u>, 322 F.3d 56, 61 (1st Cir. 2003); <u>Futura Dev. v. Estado Libre Asociado</u>, 144 F.3d 7, 12-13 (1st Cir. 1998); <u>In re San Juan Dupont Plaza Hotel Fire Lit.</u>, 888 F.2d 940, 942 (1st Cir. 1989); <u>Ramírez v. P.R. Fire Serv.</u>, 715 F.2d 694, 697 (1st Cir. 1983); <u>Fernández v. Chardón</u>, 681 F.2d 42, 59 n.13 (1st Cir. 1982).

Plaintiffs having failed to contest defendants' allegations, we deem the DOE to be an arm of the state and consequently, also immune from suit in the federal courts by virtue of the Eleventh Amendment. *See*, <u>Diaz-Fonseca</u>, 451 F.3d at 34 ("This court has assumed without discussion that the DOE's Eleventh Amendment immunity is coextensive with that of the Commonwealth's") and cases cited therein.

Additionally, suits filed against government officials in their official capacity are deemed actions against the state since the real party in interest is the government and not the official. <u>Pennhurst</u> <u>State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101-102, 104 S.Ct. 900, 908-909, 79 L.Ed.2d 67, 79 (1984). *See*, <u>Hafer v. Melo</u>, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (Eleventh Amendment immunity applies even in those cases where the state has not been nominally included in the suit); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (suits against officers in their official capacity for damages are tantamount to actions directly against the state).

CIVIL NO. 05-1928 (RLA)                                      Page 17

Eleventh Amendment immunity has been extended to suits filed under the provisions of § 1981. Bakhtiari v. Lutz, 507 F.3d 1132, 1138 (8th Cir. 2007); Keri v. Bd. of Trustees of Purdue Univ., 458 F.3d 620, 641 (7th Cir. 2006); Singletary v. Missouri Dep't of Educ., 423 F.3d 886, 891 (8th Cir. 2005); Bland v. New York, 263 F.Supp.2d 526, 534 (E.D.N.Y. 2003); Silva v. U.P.R., 817 F.Supp. 1000, 1005 (D.P.R. 1993).

Accordingly, we find that the COMMONWEALTH, the DOE and their respective commanding authorities named in their official capacity are immune from liability under 42 U.S.C. § 1981 in this case pursuant to the Eleventh Amendment.[4] Bakhtiari, 507 F.3d at 1138.

However, this doctrine does not shield codefendant FELICIANO from damages in his personal capacity. See, Redondo-Borges v. U.S. Dep't of Housing and Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005) (Eleventh Amendment does not "bar relief (whether in the form of money damages or an injunction) against the commonwealth defendants in their individual capacities.") See also, Bakhriari, 507 F.3d at 1138 ("failure to name... parties in their individual capacities invalidates [plaintiff's] remaining claims for relief under section[] 1981").

---

[4] It appearing that no equitable relief against the local government or its employees in their official capacity is viable in this case inasmuch as the minor plaintiff has left the local school system and it further appearing that no monetary relief is available against these defendants under § 1981, no remedy can be afforded plaintiffs against these defendants under this provision.

CIVIL NO. 05-1928 (RLA)                                          Page 18

## VI. TITLE VI & ART. 1802 NEGLIGENCE CLAIMS

### A. LIMITATIONS PERIOD

Because Title VI does not provide for a limitations period, the courts borrow the most analogous state provision applicable to personal injury actions. Stanley v. Trustees of Cal. St. Univ., 433 F.3d 1129, 1134 (9th Cir. 2006); Curto v. Edmundson, 392 F.3d 502, 504 (2nd Cir. 2004); Burton v. Belle Glade, 178 F.3d 1175, 1204 n.32 (11th Cir. 1999); Skidmore v. American Airlines Inc., 198 F.Supp. 131, 135 (D.P.R. 2002).

The Puerto Rico Civil Code provides for a one-year statute of limitations in actions sounding in tort. P.R. Laws Ann. tit., 28 § 5898(2) (1990). The limitations period will commence to run not necessarily from the moment claimant first learns the identity of his tortfeasor, i.e., "'actual knowledge'" but rather from the time when "'by due diligence, such knowledge would likely have been acquired.'" Torres v. E.I. Nemours, 219 F.2d at 13 (citing Villarini-Garcia v. Hosp. del Maestro, Inc., 8 F.3d 81, 84 (1st Cir. 1993)).

Although the local provisions are utilized for determining the length of the statute of limitations period federal law governs the date when the limitations period begins to run. See, Rivera Ramos v. Roman, 156 F.3d 276, 282 (1st Cir. 1998) (discussing § 1983 cause of action). Further, the accrual period will ordinarily commence "'when the plaintiff knows, or has reason to know, of the injury on which the action is based.'" Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174

(1st Cir. 1997) (citing <u>Rivera-Muriente v. Agosto-Alicea</u>, 959 F.2d 349, 353 (1st Cir. 1992)).

By way of an exception to the one year limitations period, minors are not required to institute suits while under legal age. <u>Cintrón v. E.L.A.</u>, 127 D.P.R. 582, 589 n.2 (1990). Pursuant to art. 40 of the Puerto Rico Code of Civil Procedure, P.R. Laws Ann. tit. 32, § 254(a) (2004), the one year statutory period "is tolled until a plaintiff's twenty-first birthday in the event that the plaintiff is a minor at the time the action is filed." <u>Aybar v. Crispín-Reyes</u>, 118 F.3d 10, 15 n.6 (1st Cir. 1997). *See also*, <u>Cruz Vargas v. R.J. Reynolds Tobacco Co.</u>, 218 F.Supp.2d 109, 114 (D.P.R. 2002) ("[plaintiff's] claims... not time-barred because he is a minor and the statute of limitations is tolled until he reaches the age of majority"); <u>Ocasio-Berrios v. Bristol Myers Squibb Caribbean Corp.</u>, 73 F.Supp.2d 171, 174 (D.P.R. 1999) ("In Puerto Rico, statutes of limitations do not run against minors until they reach the legal age of 21.")

Plaintiff ROBERT ALMODOVAR HOWARD was still a minor when the complaint was filed in this forum on September 1, 2005. Accordingly, the minor's claims against GREGORIO FELICIANO based on Title VI as well as the Puerto Rico negligence provisions are timely.

We must now determine whether his parent's causes of action under these two legal provisions were timely filed.

Pursuant to § 5303, the one-year term may be tolled by (1) instituting judicial proceedings, (2) submitting extra-judicial claims or (3) acknowledgment of the obligation by the person liable for the damages. Once tolled, the period starts to run anew. De Leon v. Caparra Center, 147 D.P.R. 797, 803 (1999).

The onus of proving interruption of the limitations period falls upon the plaintiff. Tokyo Marine & Fire Ins. Co., Ltd. V. Perel & Cia., 142 F.3d 4 (1st Cir. 1998). Thus, it is plaintiff's burden to establish the adequacy of an extra-judicial claim which complies with the pertinent legal requirements. Gonzalez Rodriguez v. Wal-Mart, Inc.,147 D.P.R. 215, 218 91998). *See also*, Acosta Quiñones v. Matos Rodriguez, 135 D.P.R. 668, 675 (1994) (It behooves claimant to prove the extra-judicial claim by direct or circumstantial evidence).

In order for extra-judicial claims to effectively toll the statutory period the demand must be made by the injured party or his representative to the person responsible for the damages, prior to the lapse of the statutory period and must relate to the same cause of action alleged in the complaint. De Leon, 147 D.P.R. at 810; Gonzalez Rodriguez, 147 D.P.R. at 218. That is, "it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit." Tokyo Marine, 142 F.3d at 5 (citing Rodriguez Narvaez v. Nazario, 895 F.2d 38, 44 (1st Cir. 1990)) (emphasis ours).

As defendants correctly point out, plaintiffs were aware of the alleged discriminatory conduct on the part of the math teacher as

well as of the challenged poor grade by March 31, 2004, when the report card was issued. As a matter of fact, the following day, April 1, 2004, the minor's father wrote to the then Secretary of Education complaining of the discriminatory situation.

This April 1, 2004 letter, however, does not comply with the requisites of § 5303 for extrajudicial claims regarding GREGORIO FELICIANO individually. For starters, the letter is not addressed to codefendant neither is there evidence that he was privy to the communication. Further, the relief sought therein has no bearing on the damages claims asserted against him under art. 1802 in these proceedings. No monetary demand is specifically made upon MR. FELICIANO.

The fact that plaintiffs sought, on May 18, 2004, and were able to procure on July 22, 2004, a Protective Order from the Municipal Judge in Vieques due to the harassment pattern shown by GREGORIO FELICIANO cannot possibly affect the limitations period either. No economic relief was requested via the judicial proceedings; only protection from the teacher.

Because the Title VI and negligence causes of action accrued on or about April 1, 2004, and no tolling was effected vis a vis GREGORIO FELICIANO until he was named as a party defendant in the local proceedings on April 28, 2005, which occurred beyond the one-year statutory period, the parents' claims against GREGORIO FELICIANO

in his individual capacity asserted pursuant to Title VI and art. 1802 are time-barred.

## B. FAILURE TO STATE A CLAIM

Defendants further contend that plaintiffs have failed to state a claim under Title VI of the Civil Rights Act which provides:

> No person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

Title VI prohibits only intentional discrimination of persons participating in a program or activity receiving federal financial assistance. Alexander v. Sandoval, 532 U.S. 275, 280, 212 S.Ct. 1511, 149 L.Ed.2d 517 (2001); Jackson v. Katy Independent Sch. Dist., 951 F.Supp. 1293, 1298 (S.D. Tex. 1996).

Title VI and Title IX, 20 U.S.C. § 1681 have been interpreted in *pari materia*. *See*, Barnes v. Gorman, 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) ("Court has interpreted Title IX consistently with Title VI"); Cannon v. Univ. of Chicago, 441 U.S. 677, 696, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ("The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years"); Steel v. Alma Public Sch. Dist, 162 F.Supp.2d 1083, 1085 (W.D.Ark. 2001)

CIVIL NO. 05-1928 (RLA)                                          Page 23

(Title IX and Title VI are parallel to each other and operate in the same manner"); Mock v. South Dakota Bd. of Regents, 267 F.Supp. 1017, 1019 (D.S.D. 2003) ("Title VI and Title IX may be used interchangeably in analyzing similar issues under both titles.")

Relief available under Title VI is limited to compensatory damages and injunctive relief. No punitive damages are allowed. Barnes, 536 U.S. at 187.

Defendants argue that there is no evidence that codefendant, the DOE, as an institution, intentionally discriminated against ROBERT ALMODOVAR HOWARD. They allege that upon receiving the April 1, 2004 letter, the DOE promptly assigned an investigator who interviewed students, parents and officials from the "20 de Septiembre de 1988" School on or about May 13, 2004. As a result thereof, a letter was issued to GREGORIO FELICIANO on August 4, 2004, for him to show cause why sanctions should not be imposed for his improper conduct. MR. FELICIANO was transferred to another school effective August 5, 2004.

However, the DOE may be found liable if notice was given to one of its officials who was capable of taking the necessary action to end the discriminatory conduct. "[D]amages remedy will not lie under [Title VI] unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to

CIVIL NO. 05-1928 (RLA)                                              **Page 24**

respond." <u>Gebster v. Lago Vista Sch. Dist.</u>, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) (discussing Title IX).

There is evidence in the record that plaintiffs complained to the school principal regarding the teacher's intolerable behavior which grievances went unanswered.[5] Accordingly, summary judgment is not warranted at this stage of the proceedings on this particular issue.

Accordingly, we find that the minor plaintiff may proceed to prosecute the Title VI claims with respect to the COMMONWEALTH, the DOE and the defendants in their official capacity.

It appearing that school officials are not individually liable for Title VI violations. <u>Steel</u>, 162 F.Supp.2d at 1085; <u>Jackson v. Katy Independent Sch. Dist.</u>, 951 F.Supp. 1293, 1298 (S.D. Tex. 1996) the Title VI claims asserted against GREGORIO FELICIANO in his individual capacity are hereby **DISMISSED**.

## VII. <u>IDEA - LIMITATIONS PERIOD</u>

Defendants claim that the IDEA claims asserted in these proceedings should be dismissed as untimely. MR. and MRS. ALMODOVAR allege that they effectively tolled the limitations period and that the minor's cause of action does not prescribe until he reaches majority of age. Before delving into the limitations issue we must first ascertain which of the named plaintiffs has adduced an IDEA cause of action in this case.

---

[5]  ANA DEL PILAR LOPEZ Depo. Tr. 88.

**CIVIL NO. 05-1928 (RLA)** **Page 25**

ROBERT ALMODOVAR HOWARD is no longer registered as a student with the DOE nor is there any evidence on record that equitable relief is warranted in these proceedings. Further, as previously ruled in our Order in the Matter of Defendants' Partial Motion to Dismiss (docket No. 46), IDEA does not allow compensation for emotional suffering or punitive damages. Rather, relief under this statute is limited to reimbursement of those expenses warranted by defendants' dereliction of their obligations under IDEA to provide the minor an appropriate free and public education which, in this case, are the pecuniary losses allegedly incurred by the parents in having to send him to school in Connecticut.

We find that in this case the IDEA cause of action for reimbursement of costs associated with the new school belongs to the parents, not the child. *See, i.e.*, Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364 ("If a state fails in its obligation to provide a free appropriate public education to a handicapped child the parents may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state."); L.B. ex rel. K.B. v. Nebo. Sch. Dist., 379 F.3d 966, 978 (10th Cir. 2004) ("[Minor's] parents are entitled to reimbursement for the reasonable cost of the services provided to [the minor], in support of her mainstream preschool education."); Lamonine Sch. Comm. v. Ms. Z. ex. rel. N.S., 353 F.Supp.2d 18, 32 (D.Me. 2005) ("[P]arents are entitled to reimbursement *only* if a federal court

concludes both that the public placement violated IDEA and that the private school placement was proper under the Act.") (citation and internal quotation marks omitted, italics in original).

It is uncontested that MR. and MRS. ALMODOVAR, ROBERT's parents, were the ones who incurred in the alleged expenses associated with his relocation. Thus, it is they who are entitled to reimbursement of the monies allegedly expended. Accordingly, based on the facts of this case, their son has no viable IDEA claims because there is no relief that may be granted to him in this action under this particular statute.

Like some of the other federal claims asserted in this action IDEA does not provide for a statute of limitations. Consequently, the courts follow a similar pattern and borrow from the state's most analogous limitations period. Nieves-Marquez v. The Commonwealth of P.R., 353 F.3d 108, 118 (1st Cir. 2003); M.D. v. Southington Bd. Of Educ., 334 F.3d 217, 221-22 (2nd Cir. 2003); Murphy v. Timberlane Regional Sch. Dist., 22 F.3d 1186, 1190 (1st Cir. 1994); Sanders v. Santa Fe. Public Sch., 383 F.Supp.2d 1305, 1311 (D.N.M. 2004).

We find that the one-year local limitations period applicable to personal injury actions is the appropriate term for the IDEA claims filed in these proceedings. See i.e., Murphy, 22 F.3d at 1194 (applying statute of limitations for personal injury suits). Accrual of an IDEA claim, however, is governed by federal law. "The general rule under federal law is said to be that IDEA claims accrue when the

**CIVIL NO. 05-1928 (RLA)**                                        **Page 27**

parents know or have reason to know of the injury or event that is the basis for their claim." Murphy, 22 F.3d at 1194 (citations, internal quotation marks and brackets omitted).

As previously noted, there can be no doubt that at least by April 1, 2004, ROBERT ALMODOVAR HOWARD's parents were fully aware of the alleged IDEA violations, i.e., failure to provide their minor son with an adequate individualized education program.

For purposes of tolling the limitations period, the only steps taken by them subsequent to March 31, 2004, were an April 1, 2004 letter addressed to the DOE complaining exclusively of the discriminatory racial harassment ROBERT ALMODOVAR HOWARD had been subjected to by his mathematics teacher[6] and a Notice of Intent to Sue forwarded to the Attorney General on October 13, 2004, which made no mention of any IDEA-related claims. Accordingly, pursuant to the uncontested evidence submitted in this case at no time were defendants put on notice regarding any possible IDEA violations until the instant complaint was filed which, for the first time, adduced such claims.[7]

---

[6] The letter specifically identified its subject matter as: "RE: Discrimination against student Robert Almodovar Howard."

[7] As a matter of fact, not even the local complaint filed on April 28, 2005 - outside the one-year limitations period - mentioned any of the IDEA provisions.

CIVIL NO. 05-1928 (RLA)                                    **Page 28**

Based on the foregoing, we find that only ROBERT ALMODOVAR HOWARD's parents have a cause of action under IDEA under the facts as presented in this case but that the same is time-barred.

Accordingly, the IDEA cause of action asserted in the complaint is hereby **DISMISSED**.[8]

### VIII. <u>CONCLUSION</u>

Based on the foregoing, defendant's Motion for Summary Judgment (docket No. **91**)[9] is disposed of as follows:

- The § 1981 claims asserted against the COMMONWEALTH, the DOE and defendants in their official capacity are barred under the Eleventh Amendment.

- MR. and MRS. ALMODOVAR have no standing to bring a § 1981 suit.

- The § 1981 claims asserted by ROBERT ALMODOVAR HOWARD against GREGORIO FELICIANO in his individual capacity are not barred by the statute of limitations pursuant to 28 U.S.C. § 1658.

---

[8]  Given our ruling, there is no need to address defendants' argument that no IDEA claim was possible because ROBERT ALMODOVAR HOWARD was never registered with the DOE's Orientation and Continuous Registration Centers or with the Office of the Superintendent of Schools.

[9]  See Opposition (docket No. **99**); Reply (docket No. **103**) and Answer to Defendants' Reply (docket No. **109**).

**CIVIL NO. 05-1928 (RLA)**                                        **Page 29**

- The Title VI and art. 1802 negligence claims asserted by MR. and MRS. ALMODOVAR against GREGORIO FELICIANO individually are time-barred.

- The minor plaintiff may proceed to prosecute the Title VI claims with respect to the COMMONWEALTH, the DOE and the defendants in their official capacity.

- The minor plaintiff may proceed to prosecute the art. 1802 negligence claims against GREGORIO FELICIANO in his individual capacity.

- The IDEA claims asserted in the complaint are hereby **DISMISSED.**

IT IS SO ORDERED.

San Juan, Puerto Rico, this 8th day of August, 2008.


                              S/Raymond L. Acosta
                              RAYMOND L. ACOSTA
                           United States District Judge