1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

3

4

ANN ELIZABETH HOWARD, et al.,

5

Plaintiffs,

6

v.                                          CIVIL NO. 05-1928 (RLA)

7

GREGORIO FELICIANO, et al.,

8

Defendants.

9

10

**ORDER DENYING DEFENDANTS' POST TRIAL MOTION**

11

Codefendants the COMMONWEALTH OF PUERTO RICO ("COMMONWEALTH")

12

and the PUERTO RICO DEPARTMENT OF EDUCATION ("DOE") have moved the

13

court to either order a new trial or a remittitur of the sums awarded

14

plaintiff at the conclusion of the jury trial pursuant to the

15

provisions of Rule 59 Fed. R. Civ. P.

16

The court having reviewed the evidence presented during the

17

proceedings as well as the applicable law hereby rules as follows.

18

**BACKGROUND**

19

This action was initially instituted by the parents of the minor

20

ROBERT ALMODOVAR HOWARD ("ROBERT") suing on their own behalf and in

21

representation of their son alleging, *inter alios*, discriminatory

22

harassment based on race and national origin under myriad federal and

23

local statutes. The parent's individual causes of action as well as

24

25

26

**CIVIL NO. 05-1928 (RLA)**                                          **Page 2**

most of ROBERT's claims were dismissed prior to trial.[1] Further, the minor's race discrimination claim under 42 U.S.C. § 1981 was dismissed at the conclusion of plaintiff's case in chief pursuant to Rule 50(a) Fed. R. Civ. P. Only ROBERT's national origin claims against the COMMONWEALTH and the DOE asserted under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, as well a tort claim pursued against GREGORIO FELICIANO ("FELICIANO"), the minor's teacher individually, under our supplemental jurisdiction, Laws of P.R. Ann. tit. 31, § 5141 (1990), were submitted to the jury for deliberation.

The jury found the COMMONWEALTH and the DOE liable under Title VI and awarded plaintiff the sum of $1 million dollars in damages. MR. FELICIANO was found liable under the Puerto Rico negligence statute in the sum of $25,000.00.

In support of their motion, defendants raised the following arguments:

- the damages award was not supported by the evidence and/or was excessive;

- the damages award was not supported by medical evidence;

- the verdict is against the clear weight of the evidence;

- during his closing argument plaintiff's counsel wrongly instructed the jury to assign a specific amount in damages, and

---

[1]   See Order in the Matter of Defendants' Motion for Summary Judgment (docket No. 118).

**CIVIL NO. 05-1928 (RLA)**                                                      **Page 3**

- the verdict was the result of undue passion and prejudice.

Inasmuch as these arguments are related to the evidence presented both on liability and damages during trial we shall address them separately.

## RULE 59

### New Trial

Trial judges "may grant a new trial only if they are convinced that the verdict is against the clear weight of the evidence, such that letting it stand would result in a miscarriage of justice." Valentin-Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 104 (1st Cir. 2006).

"The decision to grant a new trial is squarely within the trial court's discretion... Such deference to the trial court is particularly appropriate in cases in which the jury's verdict is challenged as against the weight of the evidence because a jury's verdict on the facts should only be overturned in the most compelling circumstances." Velazquez v. Figueroa-Gomez, 996 F.2d 425, 427 (1st Cir. 1993) (quotations and citations omitted).

"A trial judge may not upset the jury's verdict merely because he or she might have decided the case differently. On the contrary, a trial judge may grant a new trial only if she believes that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." *Id*. 996 F.2d at 428 (quotations and citations omitted).

1 **CIVIL NO. 05-1928 (RLA)** **Page 4**

2

3    "[The court] will uphold the jury's verdict unless the evidence

4 points to one conclusion and one conclusion only: that the losing

5 party was entitled to win." Goulet v. New Penn. Motor Exp., Inc., 512

6 F.3d 24, 44 (1st Cir. 2008) (quotations and citations omitted).

7    "[A] jury's verdict on the facts should only be overturned in

8 the most compelling circumstances." *Id*. 512 F.3d at 44 (quotations

9 and citations omitted).

10    "In a post-verdict motion for a new trial, the evidence is

11 viewed in the light most favorable to the verdict." Baron v. Suffolk

12 County Sheriff's Dep't., 402 F.3d 225, 245 (1st Cir. 2005).

### Title VI

13

14    Title VI[2] prohibits the intentional discrimination of persons

15 participating in a program or activity receiving federal financial

16 assistance. Alexander v. Sandoval, 532 U.S. 275, 280, 212 S.Ct. 1511,

17 149 L.Ed.2d 517 (2001); Jackson v. Katy Independent Sch. Dist., 951

18 F.Supp. 1293, 1298 (S.D. Tex. 1996).

19 _____

20    [2]  Title VI provides:

21         No person in the United States shall, on
22    the ground of race, color or national origin, be
      excluded from participation in, be denied the
      benefits of, or be subjected to discrimination
23    under any program or activity receiving Federal
      financial assistance.
24
      42 U.S.C. § 2000d.
25

26

**CIVIL NO. 05-1928 (RLA)**                                          **Page 5**

Title VI and Title IX, 20 U.S.C. § 1681 have been interpreted in *pari materia*. *See*, <u>Barnes v. Gorman</u>, 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) ("Court has interpreted Title IX consistently with Title VI"); <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677, 696, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ("The drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years"); <u>Steel v. Alma Public Sch. Dist</u>, 162 F.Supp.2d 1083, 1085 (W.D.Ark. 2001) (Title IX and Title VI are parallel to each other and operate in the same manner"); <u>Mock v. South Dakota Bd. of Regents</u>, 267 F.Supp. 1017, 1019 (D.S.D. 2003) ("Title VI and Title IX may be used interchangeably in analyzing similar issues under both titles.")

In order to prevail in his hostile environment claim under Title VI, ROBERT had to establish that he was a student, subjected to discrimination based upon his national origin and that the discrimination was sufficiently severe and pervasive as to create an abusive educational environment. <u>Bryant v. Indep. Sch. Dist. No. I-38 of Garvin County, Oklahoma</u>, 334 F.3d 928, 934 (10th Cir. 2003); <u>Rubio v. Turner Unified School Dist. No. 202</u>, 523 F.Supp.2d 1242, 1251 (D.Kan. 2007).

Further, the Government may be found liable only if notice was given to one of its officials who was capable of taking the necessary action to end the discriminatory conduct. "[D]amages remedy will not lie under [Title VI] unless an official who at a minimum has

**CIVIL NO. 05-1928 (RLA)**                                              **Page 6**

authority to address the alleged discrimination and to institute

corrective measures on the recipient's behalf has actual knowledge of

discrimination in the recipient's programs and fails adequately to

respond." <u>Gebster v. Lago Vista Sch. Dist.</u>, 524 U.S. 274, 290, 118

S.Ct. 1989, 141 L.Ed.2d 277 (1998) (discussing Title IX).

### The Evidence

The parties stipulated and the jury was so instructed that, for

purposes of the claims asserted by plaintiff pursuant to Title VI,

the DOE was a recipient of federal funds.

Codefendant GREGORIO FELICIANO was the 7th grade mathematics

teacher at the "20 de Septiembre de 1988" Intermediate School in

Vieques, Puerto Rico, during the 2003-2004 school year.

On January of 2004, plaintiff was enrolled by his parents in the

"20 de Septiembre de 1988" School. School officials were opportunely

informed that ROBERT suffered from Attention Deficit Hyperactivity

Disorder ("A.D.H.D.") and Asperger's Syndrome (a high functioning

form of autism) which entitled him to special education program

services. ROBERT had been a special education student since first

grade in stateside schools and had adequately performed until

attending FELICIANO's math class.

There was uncontradicted evidence presented at trial of the

following:

**CIVIL NO. 05-1928 (RLA)**                                                 **Page 7**

1.  Numerous posters were displayed by FELICIANO in his classroom with derogatory comments against "gringos"[3] a category of which plaintiff was the sole member in the classroom.

2.  Numerous occasions when FELICIANO would make derogatory anti-American remarks in the classroom and would directly look "meanly"[4] at plaintiff.

3.  Following plaintiff and calling him a "son of a bitch American", "asshole" and "American jerk".[5]

4.  In the Grades Report for the second cycle plaintiff received a "C" in his mathematics class as FELICIANO announced to the class "I am going to give gringo Robert a C because he is American."[6] The final grade report showed that ROBERT got A's in all his classes, except for a B in science and C in mathematics.

5.  FERDINAND ALMODOVAR PACHECO, plaintiff' father, sent a letter to DR. CESAR A. REY-HERNANDEZ, the then Secretary of Education, and other DOE officials informing them that his son had been the object of discrimination on the part of

---

[3]   A derogatory or denigrating description of an American citizen.

[4]   Testimony of ROBERT Trial Tr. 21 Lines 12-14.

[5]   Testimony of ROBERT Trial Tr. 24 Lines 4-6; 26 Lines 20-22; 25 Line 24 - 26 Line 12.

[6]   Testimony of ROBERT Trial Tr. 9 Lines 10-12.

**CIVIL NO. 05-1928 (RLA)** **Page 8**

GREGORIO FELICIANO and demanding that they take appropriate action.

6.   ROBERT's parents obtained a court restraining order against FELICIANO because they feared for their son's personal safety after their grievances to the DOE officials were met with no response whatsoever even though FELICIANO continued to follow plaintiff giving him mean looks and making denigrating remarks concerning his national origin.

7.   MR. ALMODOVAR complained to the school principal regarding the math teacher's intolerable behavior without any results. As a matter of fact, the school principal acknowledged that despite the multiple complaints received not only from the ALMODOVAR family but from other parents regarding FELICIANO's disparaging and oppressive style in the classroom her reaction was solely limited to summoning the teacher to her office and verbally calling his attention to his behavior without any further action or results.

8.   Faced with no further action by the pertinent school authorities the ALMODOVARs felt compelled, in order to avoid further harassment, to uproot the family and take their son back to the United States.

9.   It was not until *after* ROBERT had returned to Connecticut because of the DOE's failure to take any action against

CIVIL NO. 05-1928 (RLA)                                        **Page 9**

GREGORIO FELICIANO's harassment of their son that the
teacher was transferred to another school.

The overwhelming evidence presented at trial supports
plaintiff's hostile environment claim as well as the lack of adequate
response on the part of the government officials to the parent's
complaints. Hence, we find the verdict on the issue of liability
against the COMMONWEALTH and the DOE amply supported.

### Damages

Defendants allege that the fact that plaintiff's counsel
suggested damages in the specific amount of $2.3 million to the jury
during his closing argument justifies that the verdict be
disregarded. When this incident occurred, the court immediately
reprimanded the attorney and issued a contemporaneous limiting
instruction to the jury to completely and utterly disregard the sum
mentioned. This *specific* instruction was reiterated during the final
instructions.

"Because [defendant] asks us to review a jury award of damages
for excessiveness, we must examine the evidence in the light most
favorable to the award, drawing all possible inferences in its
favor." Smith v. Kmart Corp., 177 F.3d 19, 21 (1st Cir. 1999). "In
reviewing an award of damages, the district court is obliged to
review the evidence in the light most favorable to the prevailing
party and to grant remittitur or a new trial on damages only when the
award exceeds any rational appraisal or estimate of the damages that

**CIVIL NO. 05-1928 (RLA)** **Page 10**

could be based upon the evidence before it." <u>Baron</u>, 402 F.3d at 245 (quotations and citations omitted). A jury "award will not be overturned unless it is grossly excessive or so high as to shock the conscience of [the] court." <u>Valentin-Almeyda</u>, 447 F.3d at 103.

"District courts may grant a motion for new trial or remittitur only if the award exceeds any rational appraisal or estimate of the damages that could be based on the evidence before the jury and is grossly excessive, inordinate, shocking to the conscience of the court or so high that it would be a denial of justice to permit it to stand." <u>Franceschi v. Hosp. Gen. San Carlos, Inc.</u>, 420 F.3d 1, 5 (1st Cir. 2005) (quotations and citations omitted). *See also*, <u>Laaperi v. Sears, Roebuck & Co., Inc.</u>, 787 F.2d 726, 735 (1st Cir. 1986) ("[verdict] so clearly in excess of any rational appraisal of [plaintiff's] actual damages that it may not stand.")

Substituting the jury's assessment of the damages is limited to extreme situations. "[T]he obstacles which stand in the path of such claims of excessiveness are formidable ones. Translating legal damage into money damages is a matter peculiarly within a jury's ken, especially in cases involving intangible non-economic losses." <u>Smith v. Kmart Corp.</u>, 177 F.3d at 30 (citations and internal quotation marks omitted). Further, "the judge's remittitur figure must be within the range rationally supported by evidence." <u>Rodriguez-Quiñones v. Jimenez & Ruiz, S.E.</u>, 402 F.3d 251, 257 (1st Cir. 2005).

**CIVIL NO. 05-1928 (RLA)**                                    **Page 11**

Once the court decides that a remittitur is warranted, plaintiff will be allowed the option of either accepting the reduced amount or a new trial. <u>Liberty Mut. Ins. Co. v. Continental Cas. Co.</u>, 771 F.2d 579, 588 (1st Cir. 1985).

The minor's mental suffering during the unnecessarily prolonged ordeal at school was described in detail at trial by plaintiff and his parents as follows:

1.   Plaintiff's loss of his social skills and friends which he had developed on Vieques which, as an autistic child, were very difficult to achieve. He felt "damaged"[7] to the point he engaged in self-mutilation and attempted to commit suicide.

2.   The argument between the minor's mother and father over whether or not to uproot the family and leave Vieques left him in a state of anguish and despair manifested by his constant crying and dark moods which also affected his relationship with his parents.

3.   The uprooting of plaintiff and his family where the autistic plaintiff had developed, for the first time, a circle of friends and where he enjoyed the happiest moments of his life. Plaintiff also felt depressed over the fact that his family had to discontinue building the house that was going to be their permanent home in Vieques.

---

[7]  Testimony of ROBERT Trial Tr. 15 Lines 11-13.

**CIVIL NO. 05-1928 (RLA)** **Page 12**

4.   When plaintiff returned to the mainland he underwent therapy treatment for anxiety disorder and depression. He was prescribed medications and treated at a children's psychiatric hospital where he was placed on a suicide watch.[8]

### CONCLUSION

Based on the evidence presented at trial, we are convinced that the one million dollar award assessed against the COMMONWEALTH and the DOE is adequately supported and will not be disturbed.

Accordingly, defendants' Motion (docket No. **149**)[9] is **DENIED**.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 31st day of October, 2008.

S/Raymond L. Acosta
RAYMOND L. ACOSTA
United States District Judge

---

[8]   With respect to defendants' claim that the damages award was not supported by expert medical evidence, it is well established in this circuit that expert testimony is not a sine qua non to uphold an award for emotional distress. Muñiz-Olivari v. Stiffel Labs. Inc., 496 F.3d 29, 40 (1st Cir. 2007); Sanchez v. P.R. Oil Co., 37 F.3d 712, 724 (1st Cir. 1994).

[9]   See Motion in Opposition (docket No. **151**).